IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WRI INVESTMENTS III LLC,<br>a Washington limited liability company,<br><br>                   Plaintiff,<br><br>      v.<br><br>JEFFREY PELOCK, an individual,<br><br>                 Defendant. | Case No.   FILED: AUGUST 27, 2008<br>           08CV4913<br>Judge      JUDGE CASTILLO<br>           MAGISTRATE JUDGE VALDEZ<br>Magistrate Judge<br>           TC |

## COMPLAINT

Plaintiff WRI Investments III LLC, a Washington limited liability company, through its

attorneys, alleges as follows for its Complaint against Defendant Jeffrey Pelock:

## PARTIES

1.      Plaintiff WRI Investments III LLC ("Lender"), at all relevant times was and is a

Washington limited liability company, with its principal place of business in Seattle,

Washington.

2.      Defendant Jeffrey Pelock ("Guarantor"), at all relevant times, was and is a citizen

of Illinois.

## JURISDICTION AND VENUE

3.      This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that

the parties are citizens of different States and the matter in controversy exceeds the sum of

$75,000 exclusive of interest, costs and attorneys' fees.

4.      Lender, a Washington limited liability company, has three members:

Weyerhaeuser Realty Investors, a Washington corporation with its principal place of business in

Washington state, MIG Corporation, a Washington corporation with its principal place of business in Washington state, and Saltchuk Real Estate Investments, Inc., a Washington corporation with its principal place of business in Washington state.  Defendant is a citizen of Illinois.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) in that Defendant is a citizen of the State of Illinois and a resident of this judicial district, and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## BACKGROUND

6.      On or about January 13, 2006, Lender made a loan ("Loan") to Lake Vista, LLC, an Illinois limited liability company ("Borrower"), in the principal amount of $1,200,000.  The Loan is evidenced by a Promissory Note dated January 13, 2006, a true and correct copy of which is attached hereto as Exhibit A ("Note").

7.      Upon information and belief, Guarantor is the President of the sole member of Borrower.

8.      Borrower obtained the Loan to acquire and develop a residential home community project in Lake County, Illinois (the "Project").

9.      For good and valuable consideration, the receipt and sufficiency of which was acknowledged, and to induce Lender to enter into the Loan Agreement and to make the Loan, Guarantor agreed to and executed a written personal Guaranty ("Guaranty") of the Loan.  A true and correct copy of the Guaranty is attached hereto and incorporated hereto as Exhibit B.

10.      The Guaranty limited Guarantor's liability to $600,000, plus Lender's attorneys' fees and costs incurred in enforcing the Guaranty.

11.     The Loan matured on January 31, 2008, but remains unpaid.  As of July 1, 2008, the Borrower owed the Lender the sum of $919,840.85 including interest.

12.     On July 1, 2008, Plaintiff made a demand on the Borrower and the Guarantor for payment of the amount due.  A true and correct copy of the July 1, 2008 letter containing the demand is attached hereto as Exhibit C.

13.     As of the date of the filing of this Complaint, Plaintiff has received no payment from either Borrower or Guarantor.

## FIRST CAUSE OF ACTION

(Action For Payment of Written Guaranty Contract)

14-26.  Plaintiff realleges paragraphs 1-13 as paragraphs 14 through 26 of this complaint.

27.     Defendant has failed on demand to pay the amount due under the Guaranty.

**WHEREFORE**, Plaintiff WRI Investments III LLC prays:

(1)     for judgment in its favor and against Defendant Guarantor, Jeffrey Pelock, in the amount of $600,000; plus

(2)     costs and attorney's fees as provided in the Guaranty; and

(3)     such other relief as permitted by law or rule of this Court.

Dated:  August 27, 2008                    **WRI INVESTMENTS III LLC**


                                           By:    _s/ Christopher B. Wilson___
                                                   One of Its Attorneys


Christopher B. Wilson, ARDC No. 06202139
Peter B. Neumer, ARDC No. 06290330
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
Tel:   (312) 324-8400
Fax:  (312) 324-9400

***Attorneys for Plaintiff***

# EXHIBIT A

# PROMISSORY NOTE
(Subordinate Loan)
(FHR)



| | |
|---|---|
| PROJECT NAME: | Grand Pointe/Lake Vista |
| WRI LOAN NO: | 09997 |
| ORIGINATING OFFICE: | Illinois |

$1,200,000 (U.S.)                                                                 January 13, 2006

For value received, the undersigned, LAKE VISTA, LLC, an Illinois limited liability company (*"Borrower"*), promises to pay to the order of WRI INVESTMENTS III LLC, a Washington limited liability company (*"Lender"*), at 1301 5th Avenue, Suite 3100, Seattle, WA 98101-2647, or such other place as Lender may from time to time designate in writing, the sum of One Million Two Hundred Thousand Dollars ($1,200,000), or so much thereof as may from time to time be disbursed hereunder, in lawful money of the United States of America, together with interest on the unpaid principal balance from time to time outstanding hereunder from the date of the first disbursement of funds hereunder until paid at the rate set forth below.

   **1.   Loan Documents.**  This Note evidences a loan (the *"Loan"*) from Lender to Borrower.  This Note is issued pursuant to that certain Loan Agreement (the *"Loan Agreement"*) executed concurrently herewith between the Borrower and Lender.  The terms (including meanings given to defined terms) and conditions of the Loan Agreement are hereby adopted and incorporated herein.  In addition, this Note is secured by that certain Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (the *"Mortgage"*) executed concurrently herewith by Borrower as trustor/grantor, creating a lien on the real and personal property described therein and defined as the "Collateral", and certain other loan documents evidencing, securing, and otherwise governing the Loan, as more fully identified and described in the Loan Agreement (collectively, the *"Loan Documents"*).  Borrower hereby agrees to perform and comply with all of the agreements, terms, and conditions of all of the Loan Documents.

   **2.   Interest Rate.**

      **2.1   Note Rate.**  The outstanding principal balance of the Loan, any reimbursable collection costs, attorneys' fees, advances to protect security, or other advances made by Lender, and any other amounts then due under the Loan will accrue interest at an annual rate (as applicable, the "Note Rate") equal to either:  (a) 20% per annum so long as all payments due under the Loan Documents have been made in a timely manner, or (b) 22% per annum  commencing automatically on the first day of the calendar month following Borrower's failure to make any payment when due under the Loan Documents, and without the need for any prior notification by Lender, with such higher rate continuing in effect unless or until: (i) Borrower has cured all such delinquent payments (in which case the Note Rate shall revert to the rate specified in subsection (a) above), or (ii) an Event of Default (defined in the Standard Terms and Conditions) has occurred and the Default Rate is in effect pursuant to Section 2.2. below.

      **2.2   Default Rate.** Upon the occurrence of any Event of Default (as defined in the Loan Agreement), and so long as such Event of Default is continuing, and at Lender's election but without the

need for any prior notification to Borrower, interest shall accrue on the outstanding principal balance of the Loan, any reimbursable collection costs, attorneys' fees, advances to protect security, or other advances made by Lender, and any other amounts then due under the Loan at a rate equal to 25% per annum (the *"Default Rate"*). Accrual of interest at the Default Rate is designed to compensate Lender for certain damages caused by such default, including the additional expenses in servicing the Loan, the loss to Lender of the money due, and the frustration to Lender in meeting its other financial commitments. However, the accrual and payment of interest at the Default Rate shall not constitute a waiver of Lender's right to demand an immediate cure of such default or to pursue any other default remedy.

    **2.3  Calculation of Interest.**  All interest shall be calculated by applying the applicable interest rate over a year of 360 days, times the amount on which the interest is to accrue, times the actual number of days that amount is outstanding (including the first day but excluding the last day). For any Loan proceeds that are deposited in escrow based on Borrower's disbursement request, interest on such funds shall be calculated from the date Lender deposits such funds into escrow, regardless of whether and when Borrower satisfies all conditions for release of such funds from escrow. Lender shall have no obligation to require the escrow agent to deposit escrowed funds in an interest-bearing account.

    **2.4  Minimum Cumulative Interest Amount.**  Borrower has induced Lender to make the Loan by representing that Borrower shall likely draw a sufficient amount of Loan proceeds and that such Loan proceeds shall likely remain outstanding for a sufficient period of time for Lender to receive a cumulative amount of accrued interest of at least $139,190, in addition to repayment of principal and payment of the Loan Origination Fee (the *"Minimum Cumulative Interest Amount"*). Therefore, Borrower agrees that on or prior to the Maturity Date, it shall have paid or shall pay a cumulative amount of interest equal to the Minimum Cumulative Interest Amount, regardless of whether there has been sufficient principal outstanding for a sufficient period of time to accrue such Minimum Cumulative Interest Amount at the Note Rate or Default Rate, as applicable. If, for any reason, Borrower attempts to satisfy the Loan and obtain a release and termination of Lender's security interests at a time when Lender has not received the Minimum Cumulative Interest Amount, Borrower shall be required, as a condition of satisfying the Loan and obtaining a release of the Collateral, to pay Lender an additional amount of interest so that Lender has received a cumulative amount of interest equal to the Minimum Cumulative Interest Amount.

    **3.  Loan Term.**  The Loan will become due and payable in full on January 31, 2008, unless Lender accelerates the Loan after an Event of Default, in which case the Loan shall mature on the date of acceleration (the applicable date being referred to herein as the *"Maturity Date"*). On the Maturity Date, Borrower must pay all outstanding principal, accrued interest, and any other fees or charges owed to Lender or expenses for which it is entitled to be receive reimbursement. If Borrower fails to pay all such items on or before the scheduled Maturity Date set forth above, interest shall immediately and automatically accrue thereon at the Default Rate, without the need for any notice of default by Lender and without any further cure period.

    **4.  Repayment.**

    **4.1  Monthly Interest Payments.**  Borrower shall receive monthly invoices of accrued interest from Lender as provided in the Loan Agreement. On or before the 15th day of each calendar month, Borrower shall pay interest that has accrued under the Loan during the immediately preceding month. Such monthly interest payments shall commence in the first calendar month following Closing of the Loan and shall continue until all principal, then-due fees or reimbursements, or other then-due amounts

have been paid in full. However, such payments shall be made by Lender from the Interest Reserve if all conditions therefor under the Loan Agreement have been satisfied.

**4.2  Late Charge.**  Lender shall be entitled to receive a late charge equal to 5% of the amount of any monthly interest payment not received by the 15th day of each calendar month. Such late charges may be assessed automatically, without the requirement of any prior notice and without waiver of Lender's right to accrue interest at the Default Rate, to accelerate the Loan, and/or to pursue any other default remedy under the Loan Documents. Late charges constitute reasonable compensation to Lender for the additional time and expense of handling and accounting for late payments.

**4.3  Payments Upon Closings or Releases of Units or Lots.**  Borrower is required to pay certain reconveyance fees and expenses and Release Prices upon the closing of the sale of each Unit or Lot in the Project or in connection with Borrower's request to release Lender's Mortgage against any Unit or Lot. The method for calculating such items and the other terms and conditions for release of Lender's Mortgage are set forth in Section 3.5 and Exhibit B of the Loan Agreement.

**4.4  Prepayment.**  Borrower may prepay the Loan in whole or in part at any time without additional premium or penalty of any kind so long as: (i) Borrower has made all monthly interest payments, paid all fees and reimbursements owing to Lender, and performed all other obligations then due under the Loan, and (ii) Borrower has paid any additional amount required to satisfy the Minimum Cumulative Interest Amount described in Section 2.4 above.  Notwithstanding any such prepayment, Borrower shall be entitled to a release of all or any portion of Lender's security for the Loan only upon Borrower's fulfillment of all release conditions set forth in Section 3.5 of the Loan Agreement.

**5.  Joint and Several Liability.**  The liability hereunder of all individuals and entities comprising Borrower shall be joint and several.

**6.  Business Purpose.**  Borrower represents and warrants to Lender that the proceeds of this Note shall be used by Borrower exclusively for commercial and business purposes, and that none of the proceeds of this Note shall be used by Borrower for personal, family, or household purposes.

**7.  Acceleration.**  Upon the occurrence of an Event of Default in Borrower's obligations to pay any amount payable hereunder as and when due or any other Event of Default under this Note or under any of the other Loan Documents, Lender may declare, at its sole option and without notice to any party, the entire indebtedness evidenced hereby immediately due and payable in full. Failure to exercise this option or any other right Lender may have shall not constitute a waiver of the right to exercise such option or any other right in the event of any subsequent Event of Default.

**8.  Costs and Fees of Collection.**  Borrower and every other person or entity at any time liable for the payment of the indebtedness evidenced hereby shall also be liable for all costs, expenses, and fees incurred by Lender in collecting any amounts owing hereunder, including reasonable attorney's fees. Any judgment recovered by Lender shall bear interest at the Default Rate.

**9.  Waiver of Presentment.**  Borrower and every other person or entity at any time liable for the payment of the indebtedness evidenced hereby waive diligence, demand, presentment for payment, notice of protest, and notice of nonpayment of this Note. Every such person or entity further consents to any extension of the time of payment hereof or other modification of the terms of payment of this Note, the release of all or any part of the security for this Note, or the release of any party liable for the payment of

the indebtedness evidenced hereby at any time and from time to time for any reason whatsoever. Any such extension or release may be made without notice to any of such persons or entities and without discharging their liability.

    **10. No Waiver/Remedies Cumulative.** If Lender delays in exercising or fails to exercise any of its rights under this Note, that delay or failure shall not constitute a waiver of any of Lender's rights, or of any breach, default or failure of condition of or under this Note. No waiver by Lender of any of its rights, or of any such breach, default or failure of condition shall be effective unless the waiver is expressly stated in a writing signed by Lender. All of Lender's remedies in connection with this Note or under applicable law shall be cumulative, and Lender's exercise of any one or more of those remedies shall not constitute an election of remedies.

    **11. Applicable Law.** This Note is made with reference to and is to be construed in accordance with the laws of the state in which the Collateral is located, without application of any choice of law principles that would require the application of the law of any other state.

    DATED as the day and year first above written.

BORROWER:          LAKE VISTA, LLC
                              an Illinois limited liability company

                              By:  GPH MGMT LLC,
                                  an Illinois limited liability company,
                                  its Manager

                              By _____
                                Jeffrey S. Pelock
                                *its sole Member*

# EXHIBIT B

# GUARANTY





PROJECT NAME:    Grand Pointe/Lake Vista
WRI LOAN NO:    09997
ORIGINATING OFFICE:    Illinois

This Guaranty is made as of this January 13, 2006, by, JEFFREY S. PELOCK (the *"Guarantor"*), for the benefit of WRI INVESTMENTS III LLC, a Washington limited liability company (*"Lender"*).

## RECITALS

A.   Lender has agreed to make a loan (the *"Loan"*) to LAKE VISTA, LLC, an Illinois limited liability company (*"Borrower"*) in a principal amount up to $1,200,000 to provide financing for the acquisition and/or development of certain real property located in Lake County, Illinois (the *"Land"*) and the construction of certain improvements thereon (the *"Improvements"*).   The Land and Improvements to be constructed thereon by Borrower, together with all personal property now or hereafter acquired by Borrower and located on or acquired for use in connection with the Land or Improvements, are hereinafter collectively referred to as the *"Project"*.

B.   The Loan will be evidenced by, among other documents, a promissory note (the *"Note"*) executed by Borrower in favor of Lender in the amount of the Loan, and by a Loan Agreement (the *"Loan Agreement"*) executed by Borrower and Lender.   The Loan shall be secured by, among other documents, a Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (the *"Mortgage"*).   The Loan Agreement, Note, Mortgage, and any and all other documents evidencing or securing the Loan are referred to as the *"Loan Documents."*   Terms used but not defined herein shall have the meanings assigned to them in the Loan Agreement.   If there is only one Guarantor, all plural references to the *"Guarantors"* herein shall be deemed to refer only to such Guarantor.

C.   Each Guarantor is affiliated with Borrower in various ways and will receive substantial benefit from the Loan.   Accordingly, to induce Lender to make the Loan, each Guarantor has executed this Guaranty knowing and intending that Lender will materially rely upon this Guaranty in entering the Loan Agreement and making the Loan.

## AGREEMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in order to induce Lender to enter the Loan Agreement and to make the Loan, Guarantors hereby agree as follows:

**1.  Scope of Guarantee.**

**1.1**   Subject to Section 10, which (subject to certain exceptions) limits Guarantors' personal liability hereunder to $600,000 plus Lender's attorneys' fees and costs incurred in enforcing this

Guaranty, Guarantors hereby absolutely and unconditionally guaranty and promise to pay to Lender or its order any and all indebtedness of Borrower to Lender and to perform any and all obligations of Borrower under the Loan Documents. Guarantors acknowledge that they have reviewed and are fully familiar with the terms and conditions of the Loan Agreement, Note, Mortgage, and other Loan Documents, and fully understand the obligations of Borrower thereunder.

     1.2   The words *"indebtedness"* and *"obligations"* are used herein in their most comprehensive sense and include any and all advances, debts, obligations and liabilities of any kind whatsoever, including the obligation to construct and complete the Project in a timely and lien-free manner, to make such deposits with Borrower as are necessary to keep the Loan "in balance," and to perform all of Borrower's other obligations with respect to the collateral for the Loan.

     1.3   This Guaranty is continuing and shall terminate only upon full payment and performance by Borrower or Guarantors of all the terms, covenants, and conditions of the Loan that are guaranteed by Guarantors hereunder.

     **2.   Guarantors' Independent Obligations.**  Guarantors understand that their obligations to Lender hereunder are direct, personal, and independent obligations to pay and perform all of Borrower's obligations under the Loan Documents, and not as a collection guarantor, surety, endorser, or other party having only secondary liability.  The obligations of each Guarantor hereunder are joint and several and independent of the obligations of Borrower, and a separate action or actions may be brought against any Guarantor whether or not separate actions are brought against Borrower or other Guarantors, and whether or not Borrower or other Guarantors are joined in any such action or actions.  Moreover, any partial payment by Borrower or other circumstance that operates to toll any statute of limitations as to Borrower shall operate to toll such statute of limitations as to Guarantors.  Lender's rights under this Guaranty shall not be exhausted until and unless all indebtedness and obligations hereby guaranteed have been paid and fully performed.

     **3.   Modifications.**  Guarantors authorize Lender from time to time, without notice or demand to or approval by Guarantors, and even though Borrower's financial condition may have deteriorated or Guarantors may object:  (a) to renew, extend, or otherwise change the time for payment of the obligations of Borrower to Lender, (b) to increase the amount of the Loan, (c) to modify any other terms of the Loan, (d) to take and hold security for the payment of this Guaranty or any other indebtedness guaranteed, and exchange, enforce, waive, or release any such security; (e) to release Borrower or one or more Guarantors from obligations under the Loan or any guaranty thereof, (f) to apply such security and direct the amount or manner of sale thereof as the Lender in its sole discretion may determine; (g) to extend Lender's credit limits for loans to Borrower; or (h) to take any other actions with respect to the terms of or security for Borrower's indebtedness to Lender.  Notwithstanding any such action by Lender, Guarantors' unconditional guarantee shall remain in full force and effect and guarantee prompt payment and performance of all indebtedness and obligations owing by Borrower to Lender.

     **4. Guarantors' Waivers.**

     **4.1   Particular Actions by Lender.**  Guarantors hereby waive any right to require Lender to:  (i) give notice of acceptance of this Guaranty, notice of presentment or non-performance, demands for performance, or notice of the existence, creation, or modification of any indebtedness of Borrower under the Loan, (ii) record, perfect, maintain, or enforce any security for the obligations of Borrower, Guarantors,



or any other guarantor of the Loan; (iii) proceed against Borrower, any Guarantor, any other guarantor, or any other party, including the filing of any claims in any bankruptcy, probate, or other proceeding; (iv) proceed against or exhaust any security received from Borrower, any Guarantor, or any other guarantor, (v) dispose of any repossessed collateral in a "commercially reasonable" or other manner as required by the Uniform Commercial Code or other applicable statute; or (vi) pursue any other remedy in Lender's power whatsoever. Guarantors agree that their obligations hereunder shall not be affected by any circumstances, whether or not referred to herein, that might otherwise constitute a legal or equitable discharge of a guarantor or a surety, provided Lender acts in good faith.

**4.2   Other Defenses.**  Guarantors also waive any rights, claims, defenses, abatements, or rights of setoff or recoupment based on or arising out of:  (i) any legal disability, discharge, or limitation of the liability of Borrower to Lender, whether consensual or arising by operation of law or any proceeding; (ii) the death or disability of Borrower, any Guarantor, or any other guarantors; (iii) any right to cause a marshaling of Borrower's assets, and (iv) any right to require Lender to exhaust any security for the performance of Borrower's obligations or to proceed against Borrower, any particular Guarantor, or any other guarantors in any particular order, whether such right exists by statute or otherwise.

### 4.3   Anti-Deficiency and One-Form-of-Action Rules.

**4.3.1**  Guarantors understand that certain statutes, commonly referred to as "anti-deficiency" and "one form of action" rules, may prevent or inhibit a lender, after completing a non-judicial foreclosure or accepting a deed in lieu of foreclosure, from obtaining a deficiency judgment against a borrower or from collecting the amount of the deficiency from a guarantor, unless such borrower or guarantor has knowingly waived the application of such statutes and the benefits that it would otherwise receive from such statutes.  This curtailment of a lender's rights to recover a deficiency from a guarantor is based in part on the fact that a lender's election of a non-judicial foreclosure or a deed in lieu of foreclosure from among other possible default remedies impairs or eliminates a guarantor's rights of subrogation and reimbursement against the borrower, the collateral, or any other surety for borrower's obligations.

**4.3.2**  Guarantors understand that, unless they waive the protection that such rules would ordinarily confer, these "anti-deficiency" and "one form of action" rules might provide a defense to enforcement of this Guaranty if Lender elects to proceed with a non-judicial foreclosure or to accept a deed-in-lieu of foreclosure.  Nevertheless, as an inducement for Lender to make the Loan, Guarantors hereby knowingly waives, in advance, all of their rights to rely on the anti-deficiency and one-form-of-action rules in connection with the impairment of its subrogation rights, as a defense to this Guaranty.  Guarantors hereby acknowledge and agree that Lender may, in its sole discretion, exercise any right or remedy whatsoever that it may have against Borrower or any security held by Lender, including, without limitation, the right to foreclose upon any collateral for the Loan by judicial or non-judicial sale or to take a deed-in-lieu of foreclosure, without affecting or impairing in any way the liability of Guarantors hereunder (except to the extent that the indebtedness has been fully paid and performed), even if such election operates to impair or extinguish any right of reimbursement or subrogation or other right or remedy of Guarantors against Borrower or any security for the Loan.  Guarantors further waive any statutes that provide *"fair value"* protection by limiting a deficiency judgment to the difference between the property's fair market value (or foreclosure sale price, if greater) and the amount of the obligation being foreclosed.

**4.4   Jury Trial.** Guarantors hereby waive any and all rights to demand a trial by jury in any proceeding relating to this Guaranty.

**4.5   Subrogation Rights.** Until Lender shall have received full payment and performance of all of Borrower's obligations under the Loan, Guarantors shall have no right of subrogation and waive any right to enforce any remedy that Lender now has or hereafter may have against Borrower and waive any benefit of, and any right to participate in, any security now or hereafter held by Lender for the performance of Borrower's obligations to Lender.

**5.   Subordination and Assignment of Borrower Debts to Guarantors.** Guarantors hereby assign to Lender any and all rights they now or may hereafter have to receive payments from or other performance by Borrower on debts or other obligations of Borrower in favor of Guarantors. All rights of Guarantors under such debts and obligations of Borrower in favor of Guarantors are hereby subordinated to Lender's rights to payments from and performance by Borrower under the Loan Documents. Notwithstanding the foregoing assignment and subordination, prior to an Event of Default under the Loan, payments by Borrower to Guarantors may be collected and retained by Guarantors (subject to Lender's recourse against such payments under this Guaranty), but upon any Event of Default, all payments thereafter received by Guarantors under such debts shall be immediately paid over to Lender pursuant to this Guaranty or, if Lender so requests, any unpaid debts shall be collected, enforced and received by Guarantors, in trust, for the benefit of Lender, and be paid over to Lender on account of any unperformed obligations of Borrower under the Loan. Lender's receipt of such payments shall not reduce or affect in any manner the liability of Guarantors under the other provisions of this Guaranty, other than reducing the obligations under the Loan by the amount so paid.

**6.   Warranties.** Guarantors represent and warrant to Lender that:

**6.1**   The financial reports of Guarantors and other written statements that have been furnished to Lender to induce Lender to make the Loan fairly and accurately present Guarantors' financial position as of the date of such statements. Guarantors have title to all assets shown in such financial reports, there has been no material adverse change in the financial condition of any Guarantor since the date of the last report so furnished, and Guarantors hereby agree to give Lender written notice of any material adverse change in the financial condition or assets of any Guarantor, with such notice to be given within 10 days after Guarantors become aware of such material adverse change;

**6.2**   There are no actions, suits or proceedings pending or, to Guarantors' actual knowledge, threatened against any Guarantor that might result in any material adverse change in the financial condition of any Guarantor; and

**6.3**   Guarantors (and the persons executing this Guaranty on behalf of any non-individual Guarantors) have the requisite power, authority, capacity, and legal right to execute and deliver this Guaranty; no further consent, approval, resolution, or other authorization is required, and neither the execution nor delivery of this Guaranty nor compliance with the terms hereof will conflict with or constitute a breach or default under any agreement or instrument to which Guarantors are a party or will provide a basis for acceleration of any indebtedness of Guarantors to any party whatsoever.


All such warranties shall be deemed to be continuing representations and warranties until full payment and performance of the Borrower's obligations under the Loan Documents.

**7. Assignment.** This Guaranty shall benefit any and all successors and assigns of Lender, including the assignees of or participants in any indebtedness hereby guaranteed. Lender may, in its sole discretion, sell or assign participation interests in the Loan and this Guaranty, in whole or in part, without any requirement to give notice to or receive the approval of Guarantors, and may disclose any and all financial information about Guarantors to any actual or proposed assignee or participant in the Loan. Guarantors may not assign or delegate any of their obligations under this Guaranty without Lender's prior written consent, and any attempt to do so without such consent shall be of no effect and shall not release Guarantors from any obligation hereunder.

**8. Guarantors' Ongoing Reporting Obligations.** Each Guarantor shall provide Lender with updated financial statements for such Guarantor on an annual basis within 90 days after the end of each calendar year and shall notify Lender in writing of any change of address, telephone number, facsimile number, marital status (if an individual), or legal organization (if an entity) within 10 days after such event.

**9. General Provisions**

**9.1 No Waiver.** No forbearance or delay on the part of Lender in the exercise of any power, right, or privilege hereunder shall operate as a waiver thereof, nor shall a single or partial exercise of any such power, right, or privilege preclude any other or further exercise of such power, right or privilege. All powers, rights, and privileges hereunder are cumulative with and not exclusive of any powers, rights, or privileges otherwise available to Lender at law or under any documents that shall evidence or secure any loans from Lender to Borrower.

**9.2 Entire Agreement.** Except as provided in any other written agreement now or in the future executed between Lender and Guarantors, this Guaranty shall constitute the entire agreement of Guarantors with Lender with respect to the subject matter hereof. No representation, understanding, promise or condition concerning the subject matter hereof shall be binding upon Lender unless expressed in this Guaranty. No provision of this Guaranty or right of Lender hereunder can be waived nor can Guarantors be released from Guarantors' obligations hereunder except by a writing duly executed by an authorized representative of Lender.

**9.3 Severability of Provisions.** Any provision of this Guaranty that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

**9.4 Consultation with Counsel.** Guarantors acknowledge that they has consulted with counsel of its choice or had an adequate opportunity to do so in connection with execution of this Guaranty.

**9.5 Costs and Reasonable Attorneys' Fees.** Guarantors shall pay all of Lender's expenses incurred in any effort to enforce any terms of this Guaranty, whether or not any suit is filed, including, without limitation, reasonable attorneys' fees and disbursements, foreclosure costs, and title charges, and including all attorney's fees and costs incurred by Lender in connection with a bankruptcy or other insolvency proceeding of Borrower or any Guarantor and relating to any kind of review, claim, approval, relief, or procedure whatsoever in such bankruptcy. Such sums shall be immediately due and

payable and shall bear interest from the date of disbursement at the Default Rate set forth in the Loan Documents, or the maximum rate that may be collected from Borrower under applicable law, if less.

**9.6   Recourse.**  Guarantor agrees, represents, and warrants that:  (i) all assets shown on the financial statements provided by Guarantor to Lender as inducement to make the Loan (with the exception of Guarantor's personal residence) are Guarantor's sole and separate property, and neither his spouse nor any third party has any interest therein, (ii) he is executing this Guaranty with the knowledge and consent of his spouse, and (iii) he has the authority to authorize recourse, and recourse under this Guaranty shall be available, against all such assets shown on such financial statements, any other real or personal property in which he may have an interest, whether now existing or hereafter acquired, and any proceeds of the foregoing.  Guarantor further agrees that recourse under this Guaranty shall also be available against any such property that is subsequently conveyed to a living, family, or other trust in which such Guarantor and/or his or her spouse is a settlor, trustee, or beneficiary or otherwise controls.

**9.7   Governing Law.**  This Guaranty shall be governed by and construed in accordance with the laws of the State in which the Project is located, without regard to the choice of law rules of such State.

**10.   Limits on Guarantor's Personal Liability Under the Loan.**   Subject to the exceptions described in Sections 10.1 (under which there are no limitations on personal liability) and 10.2 (under which Guarantors are required to indemnify Lender for certain losses in excess of the "Recourse Amount" described below), and without in any way limiting Lender's right to seek and obtain such judgments as are necessary or appropriate to foreclose its liens against or otherwise realize the value of the Collateral (including any rents, income, insurance proceeds, condemnation awards, or other value arising from such Collateral), Lender's right to seek or obtain any judgment of personal liability against Guarantors, including a deficiency judgment, in collection of the indebtedness evidenced by the Loan Documents shall be limited such that Lender may collect from any or all of the Guarantors a maximum cumulative amount of $600,000 plus attorneys' fees and other expenses reasonably incurred by Lender in seeking to collect such amount (the ***"Recourse Amount"***).

**10.1   Circumstances Negating Personal Liability Limitation.**  Notwithstanding the conditional limitation on Guarantors' personal liability set forth in this Section 10, Lender shall have full and unlimited recourse against Guarantors for the full payment of all indebtedness evidenced by the Loan Documents if any of the following events should occur:

**10.1.1**  Borrower or any Guarantor has committed fraud or intentionally misrepresented material facts in connection with Lender's underwriting, approval, or administration of the Loan;

**10.1.2**  Borrower or any Guarantor misappropriates or embezzles Loan proceeds, Senior Loan proceeds, rents, proceeds of the sales of Units and Lots, or other proceeds of the Collateral or the Project, and uses such proceeds for other projects or for purposes unrelated to the Project;

**10.1.3**  Borrower, any Guarantor, or any trustee of Borrower or any Guarantor: (A) files a petition in bankruptcy or for an arrangement, reorganization, or any other form of debtor relief; or such a petition is filed against Borrower, any Guarantor, or any trustee of Borrower or any Guarantor that is not dismissed within 45 days after the date of filing; (B) commences any proceeding for dissolution or

liquidation or any such proceeding is commenced against such parties that is not dismissed within 45 days after the date of commencement; or (C) makes an assignment of all or substantially all of its assets for the benefit of its creditors;

       **10.1.4** Borrower or any Guarantor transfers or encumbers the Collateral or any Project asset in violation of any of the restrictions on transfer or encumbrance contained in the Loan Documents;

       **10.1.5** Borrower or any Guarantor commits material waste with respect to the Collateral or any Project asset; or

       **10.1.6** Any representation or warranty concerning hazardous materials contained in any of the Loan Documents proves to have been untrue when made, or Borrower or any Guarantor breaches any covenant concerning hazardous materials contained in the Loan Documents.

       **10.2 Indemnification Obligations In Excess of the Recourse Amount**. In addition to Lender's absolute right to recover the Recourse Amount under this Guaranty, Guarantors shall be required to indemnify Lender, and Lender shall have recourse against Guarantors, for any losses, damages, costs and expenses arising out of or in any way related to the occurrence of any of the following events:

       **10.2.1** Borrower or any Guarantor misapplies or fails to remit to Lender any insurance proceeds or condemnation proceeds involving the Collateral or any Project asset, or the Collateral or any Project asset suffers a loss or casualty that is uninsured due to Borrower's failure to maintain the insurance policies required under the Loan Documents;

       **10.2.2** Unit or Lot sales proceeds, rents, issues, profits, revenues, or other proceeds of the Collateral or any Project asset that are available (after payment of any portion thereof required to be paid to Senior Lender) and required to be paid to Lender under the Loan Documents are instead disbursed to Borrower, Borrower's affiliates, any Guarantor, or any third party (other than Senior Lender), or are otherwise used for any purpose other than making such required payment to Lender;

       **10.2.3** Borrower or any Guarantor breaches any covenant contained in any of the Loan Documents regarding the use, preservation or maintenance of the Collateral or any Project asset; or

       **10.2.4** any representation or warranty contained in any of the Loan Documents proves to have been untrue when made.

The limitation on Guarantors' personal liability and Lender's recourse set forth in this Section 10 shall not: (i) be deemed to be a release or impairment of any part of the indebtedness of Borrower to Lender or of the lien created by the Mortgage; (ii) limit or otherwise prejudice in any way the rights of Lender to enforce any of its rights and remedies under any of the other Loan Documents, including, if necessary, naming Borrower or any Guarantor as a defendant in any suit, action or proceeding; (iii) limit the right of Lender to proceed and recover a personal judgment against any person or entity receiving funds from Borrower or any Guarantor in an improper manner; or (iv) limit the liability of Borrower or any Guarantor under the Indemnity Agreement.

Executed as of the date first set forth above.

GUARANTOR:

JEFFREY S. PELOCK

Social Security:                              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

Home Address (if individual):                38W538 Michael Court
                                             St. Charles, IL 60175

Business Telephone:                          (847) 551-1300

# EXHIBIT C

# WRI INVESTMENTS III, LLC
## c/o WEYERHAEUSER REALTY INVESTORS, INC.
### 1301 Fifth Avenue, Suite 3100
### Seattle, WA 98101

Phone: (206) 264-2240
Fax: (206) 264-2241

July 1, 2008

Via Regular Mail and
Via FedEx

Lake Vista, LLC, an Illinois limited liability company
372 River Ridge Drive
Elgin, IL 60123

Jeffrey S. Pelock
36W538 Michael Court
St. Charles, IL 60175

Re:    *GUARANTY DEMAND LETTER / Lake Vista #09997*
*$1,200,000 Loan by WRI Investments III LLC, a Washington limited*
*liability company ("Lender") to Lake Vista, LLC, an Illinois limited liability*
*company ("Borrower")*

Dear Borrower and Guarantor:

As you know, **Lender** previously made a $1,200,000 subordinate loan (the **"Loan"**) to **Borrower** in connection with the acquisition and/or development of certain real property located in the City of Lake Villa, Lake County, Illinois and the construction of improvements thereon.  The Loan was made and is being administered in accordance with the terms and conditions of that certain Loan Agreement dated as of January 13, 2006 (the **"Loan Agreement"**) and is evidenced by a Promissory Note dated January 13, 2006 (the **"Note"**).  The Loan is secured, in part, by that certain Mortgage, Assignment of Rents, Security Agreement and Fixture Filing dated January 13, 2006 (the **"Deed of Trust"**).  The Loan is guaranteed by Jeffrey S. Pelock (the **"Guarantor"**) pursuant to a Guaranty entered into for the benefit of Lender dated January 13, 2006 (the **"Guaranty"**).  The Loan Agreement, Note, Mortgage, Guaranty and other loan documents are hereinafter referred to as the **"Loan Documents."**

Capitalized terms used but not defined herein shall have the meaning given to them in the Loan Documents.

July 1, 2008
Page 2 of 3

The Loan is currently in default and as of July 1, 2008, $919,840.85 is owed under the Loan Documents. As you may know, the Loan Documents include provisions for default rate interest and recovery of attorneys' fees. Interest on the Loan started accruing at the default rate as of February 01, 2008, and Lender is now accruing legal fees in planning and pursuing possible remedies, including recovery of amounts owed under the Guaranty.

This letter constitutes a demand to each of you for immediate payment of the amounts due under the Guaranty. Subject to the provisions of the Guaranty, the total amount due to Lender under the Guaranty at this time is $600,000. The Guaranty also includes provisions for recovery of attorneys' fees. So far, Lender has refrained from accruing a substantial amount of attorneys' fees in collection of the Loan and amounts due under the Guaranty. However, if we do not receive full payment of the amount due to Lender under the Guaranty immediately, we will pursue all of our rights and remedies under the Guaranty and other Loan Documents.

This letter is not intended and shall not be construed as a waiver of any of the rights or remedies available to Lender under the Loan Documents, the Guaranty or applicable law. Moreover, no failure to exercise and no delay in exercising any rights or remedies available to Lender shall operate as a waiver of or as an agreement to forebear with respect to any rights which Lender may have under the Loan Documents, the Guaranty or other law. Further, this letter shall in no way constitute, or be construed to be, a waiver of any default which may now exist or hereafter arise under the Loan Documents or the Guaranty. Lender continues to demand strict compliance with the terms and conditions of the Note, other Loan Documents and the Guaranty.

Finally, please be advised that any discussions that may have occurred or may occur in the future between representatives of Borrower and of the Lender regarding the Loan or the Project evidence nothing more than the continuing good faith attempts of the Lender to work out the existing problems in a manner that is reasonable and will accomplish full payment of the Loan. Borrower and Guarantors may not rely upon any such discussions in any manner or fashion. Unless and until a binding, written agreement has been fully executed by and between all parties, Lender's rights and remedies are and will continue to be fully enforceable under the terms of the Loan Documents and the Guaranty.

We encourage you to take whatever action is needed to arrange for prompt payment of your obligations under the Guaranty. If you have any questions, please do not hesitate to contact Mr. Steve Denenberg at (847) 273-8720.

NO ACTION TAKEN OR NOT TAKEN BY LENDER TO DATE, NOR ANY FURTHER DELAY BY MWHP IN COMMENCING ANY REMEDY SHALL BE CONSTRUED AS A WAIVER OF OR PROMISE TO FORBEAR FROM EXERCISING ANY AND ALL RIGHTS AND REMEDIES AVAILABLE TO LENDER UNDER THE LOAN DOCUMENTS AND GUARANTY. THE LOAN DOCUMENTS AND THE GUARANTY EMBODY THE FINAL, ENTIRE AGREEMENT OF BORROWER AND LENDER RELATING TO THE SUBJECT MATTER HEREOF, AND MAY NOT BE CONTRADICTED OR VARIED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OF BORROWER AND LENDER. THERE ARE NO ORAL AGREEEMENTS BETWEEN BORROWER AND LENDER.

July 1, 2008
Page 3 of 3

Sincerely,

**WRI INVESTMENTS III LLC,**
a Washington limited liability company

By:  Weyerhaeuser Realty Investors, Inc.,
     a Washington corporation
     Its Manager

By: _____
    Lorrie Scott
    Senior Vice President

By: _____
    Tedi Yasuda
    Vice President